IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD RAY WALKER, | No. C-10-1425 TEH (PR) |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS-MOTIONS FOR SUMMARY JUDGMENT |
| v. | |
| DONALD POMPAN, et al., | |
| Defendants. | Doc. ## 14, 18, 19 |

Plaintiff, a prisoner at the Correctional Training Facility ("CTF") in Soledad, California, has filed the instant pro se civil rights action under 42 USC § 1983 alleging that defendants were deliberately indifferent to his serious medical needs. Defendants now move for summary judgment. Doc. #14. Plaintiff has filed an opposition, and defendants have filed a reply. Doc. #20. Plaintiff has filed two cross-motions for summary judgment (Doc. ## 18 and 19), and defendants have filed an opposition (Doc. #21). For the reasons listed below, defendant's motion for summary judgment (Doc. #14) is GRANTED and plaintiff's cross-motions for summary judgment (Doc. ## 18 and 19) are DENIED.

**I**

Plaintiff Donald Ray Walker fractured his right femur prior to his incarceration.[1]  Doc. #1 at 9.[2]  The fracture healed and left his right leg approximately half an inch shorter than his left leg.  Id.

In early 2006, plaintiff complained of severe knee and spine pain.  Doc. #19 at 3.  On February 3, 2006, Dr. Friederichs examined plaintiff's right knee after plaintiff reported feeling pain related to a sprain.  Doc. #14, Exh. A.  Dr. Friederichs ordered x-rays of plaintiff's knees.  Id.  Dr. Catalano of Salinas Valley Radiologists interpreted the x-rays and reported that plaintiff had moderate degenerative arthritis in both knees.  (Doc. #14, Exh. B.

During a subsequent knee examination on April 3, 2006, plaintiff again complained of pain and informed Dr. Friederichs of the femur fracture that left his right leg half an inch shorter than his left leg.  Doc. #14, Exh. C.  Dr. Friederichs referred plaintiff to an orthotist to obtain a shoe lift to remedy the height discrepancy, and issued plaintiff a chrono (a note from a prison official documenting medical orders) for knee braces.  Plaintiff received a half inch shoe lift on June 23, 2006.  Doc. #19 at 3.

Plaintiff informed Dr. Friedreichs that specialists at Santa Clara Valley Medical Center in San Jose, California, had

---

[1] The record is unclear as to whether the original fracture took place in 1972 (Doc. #19 at 2) or in 1993 (Doc. #1 at 9).  However, the date of the original fracture is not relevant to the Court's analysis.

[2] As referenced herein, the pages of the complaint (Doc. #1) have been assigned numbers sequentially, beginning with the title page.

2

stated that plaintiff required full knee replacement. Doc. #1 at 5. Instead of ordering full knee replacement, on April 26, 2006, Dr. Friederichs referred plaintiff for an MRI of his right knee. Doc. #14, Exh. D. Dr. Misa Hosohama of Salinas Valley Radiologists interpreted the MRI on May 15, 2006 and reported two separate tears. Doc. #14, Exh. C. After reviewing the results of plaintiff's MRI, Dr. Friederichs referred plaintiff to Dr. Pompan, an orthopedist, for a consultation regarding the MRI results. Doc. #1 at 5. On September 22, 2006, Dr. Pompan performed an orthopedic consult on plaintiff, and obtained a history. Dr. Pompan recommended arthroscopic surgery on plaintiff's right knee, which Dr. Friederichs approved. Doc. #14, Exh. H.

Prior to conducting the surgery, on November 7, 2006, Dr. Pompan examined plaintiff's right knee again and informed plaintiff that there were no guarantees as to the outcome of the surgery and that plaintiff's pain might worsen. Doc #14, Exh. I. Dr. Pompan's notes state that plaintiff responded that he understood and still wanted to have the surgery. Id. While plaintiff does not dispute Dr. Pompan's summary of the November 7, 2006 conversation, he argues that Dr. Pompan should have warned him then that the surgery could result in an even shorter right leg. Plaintiff states that if Dr. Pompan had informed him of this, he would not have consented to the surgery. Doc. #1 at 9.

On November 15, 2006, Dr. Pompan noted "the patient does have arthritis but at this point [it is] not severe enough to warrant a total knee replacement." Doc. #1 at 14-15. On that same day, Dr. Pompan performed the surgery without any complications.

3

Id. Plaintiff, however, claims that as a result of the knee surgery, his right leg is an additional ½ inch shorter which causes him severe pain and back and hip alignment problems. Id. at 9.

Dr. Pompan examined plaintiff in a follow up appointment on November 20, 2006. He noted that the plaintiff had pain and mild swelling, instructed plaintiff to use crutches and scheduled another follow-up appointment. Doc. #14, Exh. J. On December 26, 2006, Dr. Pompan examined plaintiff again. Plaintiff complained of some stiffness, but stated that he was improving. Dr. Pompan diagnosed plaintiff with osteoarthritis and suggested exercises to improve his range of motion. Doc. #14, Exh. K.

During appointments in 2008 and 2009, plaintiff complained of severe back and knee pain to Dr. Friederichs; during an examination in August 2009, Dr. Friederichs confirmed Dr. Pompan's diagnosis of osteoarthritis and issued plaintiff a chrono for a cane. Doc. #14, Exh. N. Dr. Friederichs told plaintiff that they would need to some more work on his right knee." Doc. #18 at 11.

On March 16, 2009, Dr. Friederichs referred plaintiff for another orthotics consult for a shoe insert to remedy the leg length discrepancy. Doc #14, Exh. M. On March 25, 2009, plaintiff received shoes, inserts, and a heel and sole lift from Birkholm Orthopedic Services. Doc. #14, Exh. L. Plaintiff was provided with a 3/4 inch right leg shoe lift on May 7, 2010. Doc. #18 at 12. Plaintiff claims that the shoe lift is inadequate because the leg length discrepancy is greater than 3/4 inch. Id. at 12. On November 19, 2010, plaintiff saw a physical therapist that measured his right leg and determined it to be between 1.5 and 1.75 inches

**4**

1  shorter than his left leg.  Id. at 11.

2  Plaintiff filed a health care complaint requesting a total
3  knee replacement performed by someone other than Dr. Pompan.  Doc.
4  #19, Exh. O.  Dr. Sepulveda reviewed plaintiff's medical file and
5  concluding that plaintiff's medical records did not indicate that a
6  full knee replacement was necessary.  Id.  Plaintiff submitted the
7  complaint for second level review.  Dr. Chudy reviewed plaintiff's
8  medical file and also found that there was no indication that
9  plaintiff needed a full knee replacement.  Id.  Plaintiff submitted
10 the complaint for a third/director's level review.  Doc. #19, Exh.
11 P.  After reviewing plaintiff's medical file, Dr. Walker denied
12 plaintiff's appeal, finding that plaintiff's medical records
13 indicated that he was receiving proper medical care and that surgery
14 was not medically indicated.  Id.

15 On October 26, 2010, Dr. Friederichs renewed plaintiff's
16 chrono for a knee brace, ground floor cell, bottom bunk, wooden
17 cane, and cotton bedding; Dr. Friederichs also referred plaintiff to
18 physical therapy.  Doc. #14, Exh. P.  The physical therapists
19 instructed plaintiff to do quadriceps strengthening exercises, which
20 would alleviate some of plaintiff's knee pain.  Doc. #14, Exh. P.

21                                    II

22 Summary judgment is proper where the pleadings, discovery
23 and affidavits show that there is "no genuine dispute as to any
24 material fact and the movant is entitled to judgment as a matter of
25 law."  Fed. R. Civ. P. 56(a).  Material facts are those which may
26 affect the outcome of the case.  Anderson v. Liberty Lobby, Inc.,
27 477 U.S. 242, 248 (1986).  A dispute as to a material fact is

28                                    5

genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. <u>Id.</u>

The moving party bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. <u>Celotex Corp v. Catrett</u>, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." <u>Id.</u> at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." <u>Celotex Corp.</u>, 477 U.S. at 322 n.3. If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." <u>Celotex Corp.</u>, 477 U.S. at 323 n.4.

III

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). In order to make a prima facie showing of deliberate indifference, the plaintiff must show the following: (1) he faced a serious medical need, and (2) the defendants were deliberately indifferent to that medical need, that is, the defendants knew of it and disregarded it

6

by failing to take reasonable measures to address it. See <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1992) overruled on other grounds by <u>WMX Tech., Inc. v. Miller</u>, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc); <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994).

A.  <u>Serious Medical Need</u>

Plaintiff alleges that his knee pain constitutes a serious medical need. "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" <u>McGuckin</u>, 974 F.2d at 1059. Examples of a serious medical need include the following: 1) an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, 2) presence of a medical condition that significantly affects an individual's daily activities, or 3)the existence of chronic and substantial pain. <u>Id.</u> at 1059-60 (citations omitted).

Plaintiff claims that his knee causes him excruciating pain, Doc. #19 at 3, has been causing him pain for years, and that it requires full replacement. Viewing the facts in the light most favorable to plaintiff, plaintiff has established that his knee pain constitutes a serious medical need. See <u>McGuckin</u>, 974 F.2d at 1060 (serious medical need found where there is chronic and substantial pain).

B.  <u>Deliberate Indifference</u>

Plaintiff claims that defendants' refusal to provide him with knee replacement surgery and to obtain a second opinion from other doctors constituted deliberate indifference. Deliberate indifference requires "a purposeful act or failure to act on the

7

part of the defendant." McGuckin, 974 F.2d at 1060. It requires a showing of evidence that a prison official knowingly disregarded a substantial risk of serious harm to the plaintiff. Farmer, 511 U.S. at 836-37. To defeat summary judgment on a claim that defendants were deliberately indifferent to a plaintiff's serious medical needs, sweeping conclusory allegations will not suffice; the plaintiff must instead "set forth specific facts as to each individual defendant's deliberate indifference." Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a 1983 [deliberate indifference] claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). Similarly, a showing of nothing more than a "difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference." Rosado v. Alameida, 497 F.Supp.2d 1179, 1188 (S.D. Cal. 2007) (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)). In order to prevail on a claim involving choices between alternative courses of treatment, a prisoner "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Id. (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)).

    1.    <u>Dr. Friederichs and Dr. Pompan</u>

Plaintiff's first claim against Dr. Friederichs and Dr. Pompan is that their refusal to provide him with full knee surgery

8

constituted deliberate indifference to his serious medical need. Generally, plaintiff's disagreement with his doctor's choice of medical treatment does not give rise to a section 1983 deliberate indifference claim. <u>Franklin</u>, 662 F.2d at 1344. However, plaintiff argues that the following five pieces of evidence raise a triable issue of fact as to whether the treatment chosen (knee surgery rather than full knee replacement) was medically acceptable and/or whether the treatment was chosen with conscious disregard for an excessive risk to his health:

>    1) an x-ray taken on August 12, 2009 which plaintiff claims indicates that he needed a full knee replacement (Doc. #19 at 4 and Exh. N),
>
>    2) an MRI taken on May 15, 2006 that plaintiff claims "would infer either full knee replacement surgery or some form of replacement surgery" (Doc. #19, Exh. F),
>
>    3) an article in the National Bone and Joint Decade of 2002-2011 Handbook which recommends a total knee replacement where arthritis causes incapacitating pain (Doc. #18 at 4),
>
>    4) Dr. Friederichs' statement that more work would have to be done to his right knee which plaintiff claims is an admission that a full knee replacement would be necessary (Doc. #19 at 9 and Exh. N), and
>
>    5) statements by Santa Clara Valley Medical Center physicians that plaintiff needed a knee replacement.

Doc. #18 at 4.

Plaintiff fails to raise a triable issue of fact as to whether Dr. Pompan and Dr. Friederichs' failure to provide him with full knee replacement surgery constitutes deliberate indifference.

First, plaintiff's interpretation of his x-ray, the MRI results, and Dr. Friedrichs' statement is not supported by the record. Dr. Freiderichs' reading of the August 12, 2009 x-ray concludes that there is a spontaneous hemarthrosis of the left knee

9

with etiology still undetermined and states that an MRI of the left knee might be needed. Dr. Freiderichs' report does not recommend a full knee replacement. Doc. #19 at Exh. N. Similarly, while the May 15, 2006 MRI report concludes that plaintiff has a "[c]omplex year in the anterior horn of the lateral meniscus", it does not recommend a full knee replacement. Doc. #19 at Exh. F. Dr. Friedrichs' statement that plaintiff's knee would require more work cannot be presumed to mean that knee replacement surgery was required. More work could refer to a number of medical treatment options, including continuing observation or additional surgery.

To the extent that plaintiff argues that Drs. Pompan and Friederichs should have concluded that a full knee replacement surgery was necessary from the MRI and x-ray results, plaintiff has only made a showing of a difference of opinion as to treatment which, as a matter of law, does not does not give rise to a section 1983 deliberate indifference claim. **Franklin**, 662 F.2d at 1344

Secondly, the statements made by Santa Clara Valley Medical Center physicians and the recommended treatment set forth in the National Bone and Joint Decade of 2002-2011 Handbook are merely different medical opinions as to how to treat plaintiff's chronic pain. They are therefore insufficient to establish deliberate indifference. See **Rosado**, 497 F.Supp.2d at 1188 (citations omitted).

Nor has plaintiff raised a triable issue of fact as to whether the course of treatment chosen was "medically unacceptable under the circumstances and . . . that they chose this course in conscious disregard of an excessive risk to [his] health." See **id.**

10

The record indicates that the doctors have prescribed the following course of treatment for plaintiff's serious medical need: knee surgery, a physical therapy referral, shoe inserts, orthotic boots, a wooden cane, a knee brace, a ground floor cell, a bottom bunk, pain medication and cotton bedding. Plaintiff has not raised a trial issue of fact as to whether these accommodations were medically unacceptable in light of the circumstances. And plaintiff has not pointed to any evidence in the record that indicates that Dr. Friederichs or Dr. Pompan chose this course of treatment in conscious disregard of a risk to plaintiff's health.

Plaintiff's second claim is against Dr. Pompan for failing to inform plaintiff that the November 2006 knee surgery would result in plaintiff's right leg being an additional half inch shorter. Plaintiff does not dispute that prior to surgery, Dr. Pompan warned plaintiff that the surgery could fail to address his chronic pain, and possibly increase the pain. However, plaintiff argues that he should have been specifically informed of the shortening of the leg. Plaintiff has not raised a triable issue of fact as to whether Dr. Pompan knew that the leg shortening would be an inevitable effect of the surgery. Dr. Pompan's failure to provide plaintiff with an exhaustive list of the potential outcomes of the surgery does not raise a triable issue of fact as to whether Dr. Pompan knowingly disregarded a substantial risk of serious harm to the plaintiff. See Farmer, 511 U.S. at 836-37.

To the extent that plaintiff argues that the leg shortening is an indication of a botched surgery, this assertion is unsupported by the record. The follow up examination with the

11

plaintiff revealed typical post-operative pain and swelling. Doc. #18, Exh. J. In another follow up on December 26, 2006, plaintiff complained of some stiffness, but stated that his knee was improving. Doc. #18, Exh. K. However, even if the Court assumes that the surgery should not have shortened plaintiff's leg, there is nothing in the record that indicates Dr. Pompan deliberately shortened plaintiff's leg to cause him pain. At most, it was negligence, and is insufficient to establish deliberate indifference. See Estelle, 429 U.S. at 106.

Both Drs. Pompan and Dr. Friederichs are entitled to summary judgment as a matter of law.

### 2. Dr. Sepulveda and Dr. Walker

Plaintiff also claims that Dr. Sepulveda and Dr. Walker were deliberately indifferent because they denied his complaint requesting full knee replacement. Doc. #18 at 3. Both defendants reviewed plaintiff's medical record when they conducted different level reviews of his complaint. Both denied the complaint after determining that plaintiff's medical file did not indicate a full knee replacement. Doc. #18 at 3. Their decisions reflect their medical opinion as to the appropriate course of treatment for plaintiff, and do not give rise to a section 1983 deliberate indifference claim. See Rosado, 497 F.Supp.2d at 1188.

### C. Qualified Immunity

Defendants claim that, in the alternative, they are entitled to qualified immunity from plaintiff's claim that defendants violated his Eighth Amendment rights by being deliberately indifferent to his serious medical need. Because the

**12**

Court finds that no constitutional violation occurred, it is not necessary to reach defendants' qualified immunity argument.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (Doc. #14) is GRANTED and plaintiff's cross motions for summary judgment (Doc. ## 18 and 19) are DENIED. The clerk shall enter judgment in favor of defendants, terminate all pending motions as moot, and close the file.

IT IS SO ORDERED.

DATED    03/29/12

**THELTON E. HENDERSON**
United States District Judge