1

2

3

4

5

6

7

8               IN THE UNITED STATES DISTRICT COURT

9           FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   DONALD RAY WALKER,                    No. C-10-1425 TEH (PR)

12              Plaintiff,                 ORDER GRANTING DEFENDANTS'
                                           MOTION FOR SUMMARY JUDGMENT AND
13         v.                              DENYING PLAINTIFF'S CROSS-
                                           MOTIONS FOR SUMMARY JUDGMENT
14   DONALD POMPAN, et al.,

15

16              Defendants.
     _____/     Doc. ## 14, 18, 19

17

18         Plaintiff, a prisoner at the Correctional Training

19   Facility ("CTF") in Soledad, California, has filed the instant pro

20   se civil rights action under 42 USC § 1983 alleging that defendants

21   were deliberately indifferent to his serious medical needs.

22   Defendants now move for summary judgment.  Doc. #14.  Plaintiff has

23   filed an opposition, and defendants have filed a reply.  Doc. #20.

24   Plaintiff has filed two cross-motions for summary judgment (Doc.

25   ## 18 and 19), and defendants have filed an opposition (Doc. #21).

26   For the reasons listed below, defendant's motion for summary

27   judgment (Doc. #14) is GRANTED and plaintiff's cross-motions for

28   summary judgment (Doc. ## 18 and 19) are DENIED.

**United States District Court**
For the Northern District of California

1

**I**

2       Plaintiff Donald Ray Walker fractured his right femur

3   prior to his incarceration.[1]  Doc. #1 at 9.[2]  The fracture healed

4   and left his right leg approximately half an inch shorter than his

5   left leg.  Id.

6       In early 2006, plaintiff complained of severe knee and

7   spine pain.  Doc. #19 at 3.  On February 3, 2006, Dr. Friederichs

8   examined plaintiff's right knee after plaintiff reported feeling

9   pain related to a sprain.  Doc. #14, Exh. A.  Dr. Friederichs

10  ordered x-rays of plaintiff's knees.  Id. Dr. Catalano of Salinas

11  Valley Radiologists interpreted the x-rays and reported that

12  plaintiff had moderate degenerative arthritis in both knees.  (Doc.

13  #14, Exh. B.

14      During a subsequent knee examination on April 3, 2006,

15  plaintiff again complained of pain and informed Dr. Friederichs of

16  the femur fracture that left his right leg half an inch shorter than

17  his left leg.  Doc. #14, Exh. C.  Dr. Friederichs referred plaintiff

18  to an orthotist to obtain a shoe lift to remedy the height

19  discrepancy, and issued plaintiff a chrono (a note from a prison

20  official documenting medical orders) for knee braces.  Plaintiff

21  received a half inch shoe lift on June 23, 2006.  Doc. #19 at 3.

22      Plaintiff informed Dr. Friedreichs that specialists at

23  Santa Clara Valley Medical Center in San Jose, California, had

24  _____

25  [1]The record is unclear as to whether the original fracture took
    place in 1972 (Doc. #19 at 2) or in 1993 (Doc. #1 at 9).  However, the
26  date of the original fracture is not relevant to the Court's analysis.

27  [2]As referenced herein, the pages of the complaint (Doc. #1) have
    been assigned numbers sequentially, beginning with the title page.

28

United States District Court
For the Northern District of California

stated that plaintiff required full knee replacement.  Doc. #1 at 5.
Instead of ordering full knee replacement, on April 26, 2006, Dr.
Friederichs referred plaintiff for an MRI of his right knee.  Doc.
#14, Exh. D.  Dr. Misa Hosohama of Salinas Valley Radiologists
interpreted the MRI on May 15, 2006 and reported two separate tears.
Doc. #14, Exh. C.  After reviewing the results of plaintiff's MRI,
Dr. Friederichs referred plaintiff to Dr. Pompan, an orthopedist,
for a consultation regarding the MRI results.  Doc. #1 at 5.  On
September 22, 2006, Dr. Pompan performed an orthopedic consult on
plaintiff, and obtained a history.  Dr. Pompan recommended
arthroscopic surgery on plaintiff's right knee, which Dr.
Friederichs approved.  Doc. #14, Exh. H.

        Prior to conducting the surgery, on November 7, 2006, Dr.
Pompan examined plaintiff's right knee again and informed plaintiff
that there were no guarantees as to the outcome of the surgery and
that plaintiff's pain might worsen.  Doc #14, Exh. I.  Dr. Pompan's
notes state that plaintiff responded that he understood and still
wanted to have the surgery.  Id.  While plaintiff does not dispute
Dr. Pompan's summary of the November 7, 2006 conversation, he argues
that Dr. Pompan should have warned him then that the surgery could
result in an even shorter right leg.  Plaintiff states that if Dr.
Pompan had informed him of this, he would not have consented to the
surgery.  Doc. #1 at 9.

        On November 15, 2006, Dr. Pompan noted "the patient does
have arthritis but at this point [it is] not severe enough to
warrant a total knee replacement."  Doc. #1 at 14-15.  On that same
day, Dr. Pompan performed the surgery without any complications.

1  <u>Id.</u>  Plaintiff, however, claims that as a result of the knee

2  surgery, his right leg is an additional ½ inch shorter which causes

3  him severe pain and back and hip alignment problems.  <u>Id.</u> at 9.

4       Dr. Pompan examined plaintiff in a follow up appointment on

5  November 20, 2006.  He noted that the plaintiff had pain and mild

6  swelling, instructed plaintiff to use crutches and scheduled another

7  follow-up appointment.  Doc. #14, Exh. J.  On December 26, 2006, Dr.

8  Pompan examined plaintiff again.  Plaintiff complained of some

9  stiffness, but stated that he was improving.  Dr. Pompan diagnosed

10  plaintiff with osteoarthritis and suggested exercises to improve his

11  range of motion.  Doc. #14, Exh. K.

12       During appointments in 2008 and 2009, plaintiff complained

13  of severe back and knee pain to Dr. Friederichs; during an

14  examination in August 2009, Dr. Friederichs confirmed Dr. Pompan's

15  diagnosis of osteoarthritis and issued plaintiff a chrono for a

16  cane.  Doc. #14, Exh. N.  Dr. Friederichs told plaintiff that they

17  would need to some more work on his right knee."  Doc. #18 at 11.

18       On March 16, 2009, Dr. Friederichs referred plaintiff for

19  another orthotics consult for a shoe insert to remedy the leg length

20  discrepancy.  Doc #14, Exh. M.  On March 25, 2009, plaintiff

21  received shoes, inserts, and a heel and sole lift from Birkholm

22  Orthopedic Services.  Doc. #14, Exh. L.  Plaintiff was provided with

23  a 3/4 inch right leg shoe lift on May 7, 2010.  Doc. #18 at 12.

24  Plaintiff claims that the shoe lift is inadequate because the leg

25  length discrepancy is greater than 3/4 inch.  <u>Id</u>. at 12.  On

26  November 19, 2010, plaintiff saw a physical therapist that measured

27  his right leg and determined it to be between 1.5 and 1.75 inches

28

**4**

1 shorter than his left leg. Id. at 11.

2 Plaintiff filed a health care complaint requesting a total

3 knee replacement performed by someone other than Dr. Pompan. Doc.

4 #19, Exh. O. Dr. Sepulveda reviewed plaintiff's medical file and

5 concluding that plaintiff's medical records did not indicate that a

6 full knee replacement was necessary. Id. Plaintiff submitted the

7 complaint for second level review. Dr. Chudy reviewed plaintiff's

8 medical file and also found that there was no indication that

9 plaintiff needed a full knee replacement. Id. Plaintiff submitted

10 the complaint for a third/director's level review. Doc. #19, Exh.

11 P. After reviewing plaintiff's medical file, Dr. Walker denied

12 plaintiff's appeal, finding that plaintiff's medical records

13 indicated that he was receiving proper medical care and that surgery

14 was not medically indicated. Id.

15 On October 26, 2010, Dr. Friederichs renewed plaintiff's

16 chrono for a knee brace, ground floor cell, bottom bunk, wooden

17 cane, and cotton bedding; Dr. Friederichs also referred plaintiff to

18 physical therapy. Doc. #14, Exh. P. The physical therapists

19 instructed plaintiff to do quadriceps strengthening exercises, which

20 would alleviate some of plaintiff's knee pain. Doc. #14, Exh. P.

21 II

22 Summary judgment is proper where the pleadings, discovery

23 and affidavits show that there is "no genuine dispute as to any

24 material fact and the movant is entitled to judgment as a matter of

25 law." Fed. R. Civ. P. 56(a). Material facts are those which may

26 affect the outcome of the case. Anderson v. Liberty Lobby, Inc.,

27 477 U.S. 242, 248 (1986). A dispute as to a material fact is

28

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  genuine if there is sufficient evidence for a reasonable jury to

2  return a verdict for the nonmoving party.  Id.

3      The moving party bears the initial burden of identifying

4  those portions of the pleadings, discovery and affidavits which

5  demonstrate the absence of a genuine issue of material fact.

6  Celotex Corp v. Catrett, 477 U.S. 317, 323 (1986).  Where the moving

7  party will have the burden of proof on an issue at trial, it must

8  affirmatively demonstrate that no reasonable trier of fact could

9  find other than for the moving party.  But on an issue for which the

10 opposing party will have the burden of proof at trial the moving

11 party need only point out "that there is an absence of evidence to

12 support the nonmoving party's case."  Id. at 325.

13     Once the moving party meets its initial burden, the

14 nonmoving party must go beyond the pleadings and, by its own

15 affidavits or discovery, "set forth specific facts showing that

16 there is a genuine issue for trial." Celotex Corp., 477 U.S. at 322

17 n.3.  If the nonmoving party fails to make this showing, "the moving

18 party is entitled to a judgment as a matter of law." Celotex Corp.,

19 477 U.S. at 323 n.4.

20                              III

21     Deliberate indifference to serious medical needs violates

22 the Eighth Amendment's proscription against cruel and unusual

23 punishment.  Estelle v. Gamble, 429 U.S. 97, 104 (1976).  In order

24 to make a prima facie showing of deliberate indifference, the

25 plaintiff must show the following: (1) he faced a serious medical

26 need, and (2) the defendants were deliberately indifferent to that

27 medical need, that is, the defendants knew of it and disregarded it

28                              **6**

United States District Court
For the Northern District of California

by failing to take reasonable measures to address it.  See McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992) overruled on other grounds by WMX Tech., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc); Farmer v. Brennan, 511 U.S. 825, 837 (1994).

A.   Serious Medical Need

Plaintiff alleges that his knee pain constitutes a serious medical need.  "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059.  Examples of a serious medical need include the following: 1) an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, 2) presence of a medical condition that significantly affects an individual's daily activities, or 3)the existence of chronic and substantial pain.  Id. at 1059-60 (citations omitted).

Plaintiff claims that his knee causes him excruciating pain, Doc. #19 at 3, has been causing him pain for years, and that it requires full replacement.  Viewing the facts in the light most favorable to plaintiff, plaintiff has established that his knee pain constitutes a serious medical need.  See McGuckin, 974 F.2d at 1060 (serious medical need found where there is chronic and substantial pain).

B.   Deliberate Indifference

Plaintiff claims that defendants' refusal to provide him with knee replacement surgery and to obtain a second opinion from other doctors constituted deliberate indifference.  Deliberate indifference requires "a purposeful act or failure to act on the

United States District Court
For the Northern District of California

part of the defendant." <u>McGuckin</u>, 974 F.2d at 1060.  It requires a showing of evidence that a prison official knowingly disregarded a substantial risk of serious harm to the plaintiff.  <u>Farmer</u>, 511 U.S. at 836-37.  To defeat summary judgment on a claim that defendants were deliberately indifferent to a plaintiff's serious medical needs, sweeping conclusory allegations will not suffice; the plaintiff must instead "set forth specific facts as to each individual defendant's deliberate indifference."  <u>Leer v. Murphy</u>, 844 F.2d 628, 634 (9th Cir. 1988).

        "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a 1983 [deliberate indifference] claim."  <u>Franklin v. Oregon</u>, 662 F.2d 1337, 1344 (9th Cir. 1981).  Similarly, a showing of nothing more than a "difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference."  <u>Rosado v. Alameida</u>, 497 F.Supp.2d 1179, 1188 (S.D. Cal. 2007) (citing <u>Sanchez v. Vild</u>, 891 F.2d 240, 242 (9th Cir. 1989)).  In order to prevail on a claim involving choices between alternative courses of treatment, a prisoner "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health."  <u>Id.</u> (citing <u>Jackson v. McIntosh</u>, 90 F.3d 330, 332 (9th Cir. 1996)).

        1.  <u>Dr. Friederichs and Dr. Pompan</u>

        Plaintiff's first claim against Dr. Friederichs and Dr. Pompan is that their refusal to provide him with full knee surgery

8

constituted deliberate indifference to his serious medical need. Generally, plaintiff's disagreement with his doctor's choice of medical treatment does not give rise to a section 1983 deliberate indifference claim.  <u>Franklin</u>, 662 F.2d at 1344.  However, plaintiff argues that the following five pieces of evidence raise a triable issue of fact as to whether the treatment chosen (knee surgery rather than full knee replacement) was medically acceptable and/or whether the treatment was chosen with conscious disregard for an excessive risk to his health:

> 1) an x-ray taken on August 12, 2009 which plaintiff claims indicates that he needed a full knee replacement (Doc. #19 at 4 and Exh. N),
>
> 2) an MRI taken on May 15, 2006 that plaintiff claims "would infer either full knee replacement surgery or some form of replacement surgery" (Doc. #19, Exh. F),
>
> 3) an article in the National Bone and Joint Decade of 2002-2011 Handbook which recommends a total knee replacement where arthritis causes incapacitating pain (Doc. #18 at 4),
>
> 4) Dr. Friederichs' statement that more work would have to be done to his right knee which plaintiff claims is an admission that a full knee replacement would be necessary (Doc. #19 at 9 and Exh. N), and
>
> 5) statements by Santa Clara Valley Medical Center physicians that plaintiff needed a knee replacement.

Doc. #18 at 4.

Plaintiff fails to raise a triable issue of fact as to whether Dr. Pompan and Dr. Friederichs' failure to provide him with full knee replacement surgery constitutes deliberate indifference.

First, plaintiff's interpretation of his x-ray, the MRI results, and Dr. Friedrichs' statement is not supported by the record.  Dr. Freiderichs' reading of the August 12, 2009 x-ray concludes that there is a spontaneous hemarthrosis of the left knee

United States District Court

For the Northern District of California

**9**

United States District Court
For the Northern District of California

with etiology still undetermined and states that an MRI of the left knee might be needed.  Dr. Freiderichs' report does not recommend a full knee replacement.  Doc. #19 at Exh. N.  Similarly, while the May 15, 2006 MRI report concludes that plaintiff has a "[c]omplex year in the anterior horn of the lateral meniscus", it does not recommend a full knee replacement.  Doc. #19 at Exh. F.  Dr. Friedrichs' statement that plaintiff's knee would require more work cannot be presumed to mean that knee replacement surgery was required.  More work could refer to a number of medical treatment options, including continuing observation or additional surgery.

To the extent that plaintiff argues that Drs. Pompan and Friederichs should have concluded that a full knee replacement surgery was necessary from the MRI and x-ray results, plaintiff has only made a showing of a difference of opinion as to treatment which, as a matter of law, does not does not give rise to a section 1983 deliberate indifference claim.  <u>Franklin</u>, 662 F.2d at 1344

Secondly, the statements made by Santa Clara Valley Medical Center physicians and the recommended treatment set forth in the National Bone and Joint Decade of 2002-2011 Handbook are merely different medical opinions as to how to treat plaintiff's chronic pain.  They are therefore insufficient to establish deliberate indifference.  <u>See</u> <u>Rosado</u>, 497 F.Supp.2d at 1188 (citations omitted).

Nor has plaintiff raised a triable issue of fact as to whether the course of treatment chosen was "medically unacceptable under the circumstances and . . . that they chose this course in conscious disregard of an excessive risk to [his] health."  <u>See</u> <u>id.</u>

10

United States District Court
For the Northern District of California

The record indicates that the doctors have prescribed the following course of treatment for plaintiff's serious medical need: knee surgery, a physical therapy referral, shoe inserts, orthotic boots, a wooden cane, a knee brace, a ground floor cell, a bottom bunk, pain medication and cotton bedding.  Plaintiff has not raised a trial issue of fact as to whether these accommodations were medically unacceptable in light of the circumstances.  And plaintiff has not pointed to any evidence in the record that indicates that Dr. Friederichs or Dr. Pompan chose this course of treatment in conscious disregard of a risk to plaintiff's health.

Plaintiff's second claim is against Dr. Pompan for failing to inform plaintiff that the November 2006 knee surgery would result in plaintiff's right leg being an additional half inch shorter. Plaintiff does not dispute that prior to surgery, Dr. Pompan warned plaintiff that the surgery could fail to address his chronic pain, and possibly increase the pain.  However, plaintiff argues that he should have been specifically informed of the shortening of the leg. Plaintiff has not raised a triable issue of fact as to whether Dr. Pompan knew that the leg shortening would be an inevitable effect of the surgery.  Dr. Pompan's failure to provide plaintiff with an exhaustive list of the potential outcomes of the surgery does not raise a triable issue of fact as to whether Dr. Pompan knowingly disregarded a substantial risk of serious harm to the plaintiff. See Farmer, 511 U.S. at 836-37.

To the extent that plaintiff argues that the leg shortening is an indication of a botched surgery, this assertion is unsupported by the record.  The follow up examination with the

11

United States District Court
For the Northern District of California

1 | plaintiff revealed typical post-operative pain and swelling.  Doc.
2 | #18, Exh. J.  In another follow up on December 26, 2006, plaintiff
3 | complained of some stiffness, but stated that his knee was
4 | improving.  Doc. #18, Exh. K.  However, even if the Court assumes
5 | that the surgery should not have shortened plaintiff's leg, there is
6 | nothing in the record that indicates Dr. Pompan deliberately
7 | shortened plaintiff's leg to cause him pain.  At most, it was
8 | negligence, and is insufficient to establish deliberate
9 | indifference.  See Estelle, 429 U.S. at 106.

10 |       Both Drs. Pompan and Dr. Friederichs are entitled to
11 | summary judgment as a matter of law.

12 |       2.  Dr. Sepulveda and Dr. Walker

13 |       Plaintiff also claims that Dr. Sepulveda and Dr. Walker
14 | were deliberately indifferent because they denied his complaint
15 | requesting full knee replacement.  Doc. #18 at 3.  Both defendants
16 | reviewed plaintiff's medical record when they conducted different
17 | level reviews of his complaint.  Both denied the complaint after
18 | determining that plaintiff's medical file did not indicate a full
19 | knee replacement.  Doc. #18 at 3.  Their decisions reflect their
20 | medical opinion as to the appropriate course of treatment for
21 | plaintiff, and do not give rise to a section 1983 deliberate
22 | indifference claim.  See Rosado, 497 F.Supp.2d at 1188.

23 | C.  Qualified Immunity

24 |       Defendants claim that, in the alternative, they are
25 | entitled to qualified immunity from plaintiff's claim that
26 | defendants violated his Eighth Amendment rights by being
27 | deliberately indifferent to his serious medical need.  Because the

28 |

1   Court finds that no constitutional violation occurred, it is not

2   necessary to reach defendants' qualified immunity argument.

3                            CONCLUSION

4           For the foregoing reasons, defendants' motion for summary

5   judgment (Doc. #14) is GRANTED and plaintiff's cross motions for

6   summary judgment (Doc. ## 18 and 19) are DENIED.  The clerk shall

7   enter judgment in favor of defendants, terminate all pending motions

8   as moot, and close the file.

9

10          IT IS SO ORDERED.

11

12  DATED      03/29/12                     _____

13                                          THELTON E. HENDERSON
                                            United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    13